IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEYSMART, LLC, | ) | |
| | ) | Judge: Andrea Wood |
| Plaintiff, | ) | |
| | ) | Magistrate: |
| v. | ) | |
| | ) | Civil Action No.: 1:15-CV-05701 |
| VANTE, INC. and | ) | |
| AU-MY, LTD., | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION AGAINST DEFENDANT VANTE, INC.**

Pursuant to Rule 65 (a) (1) of the Federal Rules of Civil Procedure, Plaintiff Keysmart, LLC respectfully moves for an order preliminarily enjoining Defendant Vante, Inc. from further making, using, selling and offering to sell pocket key organizers having substantially the same ornamental design described and claimed in U.S. Design Patent D705,533, issued to Michael Tunney ("the '533 patent" Exhibit 1), including those sold under the trademark KEY NINJA®.

**I.     INTRODUCTION**

   **A.     The Patented Pocket Key Organizer**

Michael Tunney designed a new and ornamental pocket key organizer and formed a company, Keysmart, LLC ("Keysmart") to make and sell the key organizer. On June 20, 2013, Mr. Tunney filed U.S. Patent Application Serial No. 29/458,514, which later issued as '533 patent. The pocket key organizers sold by Keysmart, LLC have the ornamental design that is claimed in the '533 patent (Exhibit 2, front and back views). Keysmart's packaging provides notice of the '533 patent (Exhibit 3).

Sales of KEYSMART® pocket key organizers exploded, reaching $500,000 in 2013, $3.6 million in 2014, and estimated to reach $12 million in 2015 (Tunney Affidavit, Exhibit 4, ¶ 3). Sales to date have been entirely over the internet, via websites such as www.getkeysmart.com, www.amazon.com, www.youtube.com, www.facebook.com, www.groupon.com, www.instagram, and others (Exhibit 4, ¶ 5). The rapid growth in sales required extensive and expensive marketing by Keysmart, LLC, with designed and marketing expenditures of $1 million in 2013 and 2014 (Exhibit 4, ¶ 4). To date, Keysmart, LLC has marketed its pocket key organizers only over the internet (Exhibit 4, ¶ 5).

Not surprisingly, the amazing popularity of KEYSMART® pocket key organizers has attracted competition from various online sellers. Some of the online competitors copied Keysmart's patented design, dimensions and image, with little or no variation. By copying Keysmart's patented design, these competitors have avoided substantially all of Keysmart's research, development and marketing costs associated with designing and marketing a new and innovative product. By copying Keysmart's patented design and avoiding Keysmart's costs, these competitors have been able to undercut Keysmart's pricing of pocket key organizers. This has resulted in erosion of Keysmart's profits, pricing, and market share.

**B.    Vante's Infringing Pocket Key Organizer**

Vante, Inc. ("Vante") d/b/a Vante Toys, has been the most aggressive copier of Keysmart's patented pocket key organizer. At least since 2014, Vante has been making and selling a KEY NINJA® pocket key organizer (Exhibits 4I, 5-7) which substantially duplicates the patented design. Vante advertises its pocket key organizer as "The Key Ring Reinvented" even though its "invention" was to substantially copy Keysmart's patented design. (Exhibit 4I).

Not surprisingly, Vante capitalized on its savings on development and marketing by offering its pocket key organizer at a lower price than the KEYSMART® pocket key organizer. Some of Vante's internet advertising compares the KEY NINJA® and KEYSMART® pocket key organizers <u>only</u> by affirmatively stating "Key Smart is overpriced – KeyNinja.com" (Exhibits 4, ¶ 9; 4A and 4B). This advertising plainly conveys that, from Vante's perspective, the only significant difference between the two products is Vante's lower price. Of course, it is always less expensive to copy a patented design than to design and market a new product from scratch.

Vante aggressively advertises its KEY NINJA® pocket key organizer for sale online, using a dedicated interactive website www.KeyNinja.com, www.facebook.com, www.amazon.com, www.groupon.com, and www.youtube.com, for example. (Exhibits 4C – 4H). Vante has also uses advertising channels not yet used by Keysmart on other competitors, including television advertising. (Exhibits 4C and 4I).

More recently, Vante announced its intentions to sell the KEY NINJA® pocket key organizers using traditional retail outlets. Exhibit 4J ("Let's get the word out about Key Ninja. Coming to stores nationwide this September!"); Exhibit 4K ("Alex Shlaferman: Awesome meeting at Home Depot"). Neither Keysmart, nor any other copier, has sold the patented pocket key organizer through retail stores. The amount of sales and profits lost to Keysmart from Vante's collective use of internet advertising, television advertising and retail outlets is difficult or impossible to determine.

## II. STANDARDS FOR GRANTING A PRELIMINARY INJUNCTION

The factors relevant to the grant or denial of a preliminary injunction are 1) likelihood of success on the merits of the underlying litigation, 2) whether irreparable harm is likely if the injunction is not granted, 3) the balance of hardships between the litigants, and 4) the public interest.

Abbott Labs v. Sandoz, Inc., 544 F.3d 1341, 1344-5 (Fed. Cir. 2008). The Seventh Circuit interprets "likelihood of success on the merits" as meaning that, for the injunction to be granted, the plaintiff must show "some likelihood of success on the merits" Abbott Labs v. Mead Johnson, 971 F.2d 6, 11 (7th Cir. 1992). The Federal Circuit generally views the grant of a preliminary injunction as a matter of procedural law, and on appeal has applied the procedural law of the circuit where the case was brought. Abbott Labs, 544 F.3d at 1366-7; Mikohn Gaming Corp. v. Acres Gaming, Inc. 165 F.3d 891, 894 (Fed. Cir. 1998). "Some likelihood of success" means at least "a trivial chance of succeeding on the merits." Frullatti Franchise Sys. v. Dana Areece & Co., 2001 U.S. Dist. LEXIS 8900 at *4 (N.D. Ill. 2001).

All statutory presumptions apply at the preliminary injunction stage, including the presumption that a patent is valid. Abbott Labs, 544 F.3d at 1346. The test for infringement of a design patent is whether, in the eye of an ordinary observer giving such attention as a purchaser usually gives, the accused design is substantially the same as the patented design. Revision Military, Inc. v. Balboa Mfg. Co., 700 F.3d 524 (Fed. Cir. 2012); Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008). Minor differences in the two designs do not negate infringement. Payless Shoesource, Inc. v. Reebok International, Ltd., 998 F.2d 985, 990-1 (Fed. Cir. 1993).

A finding of irreparable harm requires a showing that there is no adequate remedy at law. Abbott Labs, 544 F.3d at 1366-7. Irreparable harm is often presumed where the patent owner shows a likelihood of success on the merits. Cobraco Mfg. Co. v. Valley View Specialties Co., 1990 U.S. Dist. LEXIS 10958 at *6 (N.D. Ill. 1990). The presence of other infringers who have not yet been sued does not negate irreparable harm. Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1151 (Fed. Cir. 2011). The fact that an infringer's harm affects only a portion of a patentees' business says nothing about whether the harm can be rectified. Id., 659 F.3d at 1152.

The balance of hardships favors the patent owner when injunction is apparent. One who builds a business on an infringing product cannot be heard to complain if an injunction destroys that business. On the other hand, requiring a patent owner to compete against its own patented invention, with consequent erosion of market share, price and profits, places a substantial hardship on the patent owner. Robert Bosch, LLC, 659 F.3d at 1156; Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986).

Finally, when a patent is likely to be found valid and enforceable, "there can be no serious argument that public interest is not best served by enforcing it." Abbott Labs, 544 F.3d at 1179-80.

## III. ARGUMENT

### A. Keysmart Is Likely To Prevail On The Merits

As explained above, the Federal Circuit requires that Keysmart can demonstrate "some likelihood of success on the merits". Abbott Labs, 971 F.2d at 11.

Exhibit 5 is a perspective view of Vante's KEY NINJA® pocket key organizer, compared to Fig. 1 of the '533 patent. As shown, Vante copied the overall shape of the pocket key organizer, and even copied the over-sized fasteners that are used to hold the front and back walls of the pocket key organizer together. The only change to the overall ornamental design was that instead of smoothing and rounding the corners at both ends of the front and back walls, Vante cut the corners. Such a minor difference does not negate infringement. Payless Shoesource, Inc., 998 F.2d at 990-1.

Vante also formed openings in the outer and end of the back wall (Exhibit 5). The openings are functional, and do not form part of the ornamental design covered by Keysmart's design patent. Apple Inc. v. Samsung Elecs. Co., 786 F.3d 983, 998 (Fed. Cir. 2015) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent"); Odd Z On Prods., Inc. v.

Just Toys, Inc., 785 F.3d 983, 998 (Fed. Cir. 2015).  The central opening in Vante's back wall facilitates manual grabbing and movement of keys, and the end opening enables the insertion of the pocket key organizer on a key ring.  Infringement of a design patent requires a substantial similarity between the claimed ornamental (non-functional) features and the accused design.  Payless Shoesource, Inc., 998 F.2d at 990.

Exhibit 6 is a bottom view of Vante's KEYSMART® pocket key organizer, compared to Fig. 7 of the '533 patent.  The overall ornamental designs are very similar as explained above.  Both the patented design and the KEY NINJA® product use oversized mating fasteners, visible from the bottom, having diameters that exceed two-thirds of the width of the respective pocket key organizers.

Figs. 4 and 5 of the '533 patent illustrate opposing side views of the patented design.  Exhibit 7 is a side view of Vante's KEY NINJA® product, compared to the patented design.  The side views are very similar, revealing the oversized fasteners on the top wall, the oversized mating fasteners on the bottom wall, and the cylindrical posts between the top and bottom walls.  The only noticeable difference is that the top wall of the KEY NINJA® product is thicker than the bottom wall, whereas both walls of the patented design have about the same thickness.

The overwhelming similarities between the patented design and the KEY NINJA® product are such that, in the eye of an ordinary observer giving such attention as a purchaser usually gives, the KEY NINJA® design is substantially the same as the patented design.  Revision Military, Inc., Id., Egyptian Goddess, Inc., Id.  The minor differences do not negate infringement.  Payless Shoesource, Inc., Id.  Keysmart is more likely than not to prevail on the infringement issue.

Keysmart is also more likely than not to prevail on the validity issue because the '533 patent is presumed valid, and no serious challenge to its validity has been raised. Abbott Labs, 544 F.3d at 1346. Keysmart has demonstrated a likelihood of success on the merits.

### B. Keysmart Is Likely To Suffer Irreparable Harm If The Injunction Is Not Granted

To date, Keysmart has sold its pocket key organizers online, over the internet, and has made substantial investments in internet advertising the promotion. (Exhibit 4, ¶¶ 4 and 5). Keysmart has not yet penetrated the conventional retail market, and has not relied on television advertising or other non-internet promotions. Vante, by contrast, has marketed its KEY NINJA® product using both television and internet advertising, and has publicly announced its intention to offer the product in conventional retail outlets beginning in September (Exhibits 4J and 4K).

At present, Keysmart has no way of determining how many of its internet sales have been and will be lost to Vante's collective use of internet, television, and conventional retail outlets. Many internet purchasers also watch television, but how many of them have seen Vante's television advertisements? Keysmart has no way of knowing how many of Vante's KEY NINJA® purchasers prefer retail purchasing over the internet, or vice versa, and how many of these purchasers select Vante's product over Keysmart's product based on its retail availability.

Moreover, Vante's advertising that "Key Smart is overpriced" (Exhibits 4A and 4B) is a classic copier's strategy of avoiding research, development and initial marketing costs for a patented product, and passing the savings along to consumers, while simultaneously disparaging the patent owner. The precise amount of injury resulting from simultaneous a) price cutting, b) market erosion, and c) disparagement of the patent owner is difficult or impossible to determine.

The difficulty in quantifying a plaintiff's loss, in dollar amounts, is a preeminent reason for finding irreparable harm. American Hospital Supply Corp. v. Hospital Products, Ltd. 780 F.2d 589,
4818-8759-9654.1                           7

595-6 (7th Cir. 1986); Gateway E. Ry v. Terminal R. R. Ass'n, 35 F.3d 1134, 1139-40 (7th Cir. 1994). When an injury cannot be quantified, there is no adequate remedy at law, and an equitable injunction becomes the only way to stem immeasurable losses. Id. Keysmart's only possible remedy is to try to preserve its market share and pricing in advance of the holiday shopping season. This can only be accomplished via a preliminary injunction.

Moreover, the possible presence of other infringers who have not yet been sued does not negate a finding of irreparable harm. Robert Bosch LLC, 659 F.3d at 1151. Picking off one infringer at a time is not consistent with being irreparably harmed, especially when the most threatening infringer is first in line. Id. Keysmart has been and will continue to be irreparably harmed by Vante's infringement, unless Vante is enjoined.

### C. The Balance Of Hardships Favors Keysmart

One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected. Robert Bosch LLC, 659 F.3d at 1156; Windsurfing Int'l, Inc., 782 F.2d at 1003 n. 2. On the other hand, requiring Keysmart to compete against its own patented invention, with the resultant harms described above, places a substantial hardship on Keysmart. This factor strongly favors entry of a preliminary injunction. Robert Bosch, LLC, Id.

### D. The Public Interest Favors Keysmart

The public interest is served by encouraging Keysmart's creation of a new and ornamental pocket key organizer, and incurring the costs involved in that process. Moreover, as explained above, there is a substantial likelihood that the '533 patent will be found valid and enforceable. Under these circumstances, there can be no serious argument that the public interest is not best served by enforcing it. Abbott Labs, 544 F.3d at 1362-3.

## IV. CONCLUSION

Keysmart's Motion For A Preliminary Injunction should be granted.

Date: August 6, 2015

Respectfully Submitted,

/s/ Maxwell J. Petersen
Maxwell J. Petersen
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 W. Adams Street, Suite 300
Chicago, IL 60661
Tel.: (312) 462-3558
Fax: (312) 345-1778
Email: Maxwell.Petersen@lewisbrisbois.com

ATTORNEYS FOR PLAINTIFF KEYSMART, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August 2015, I caused to be served, by email and overnight courier, copies of the foregoing on the following:

>Richard S. Stockton
>rstockton@bannerwitcoff.com
>Azuka C. Dike
>adike@bannerwitcoff.com
>Banner & Witcoff, Ltd.
>10 South Wacker Drive, Suite 3000
>Chicago, IL  60606


/s/Maxwell J. Petersen