IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KEYSMART, LLC** <br><br> Plaintiff, <br><br> v. <br><br> **VANTE, INC. and** <br> **AU-MY, LTD.,** <br><br> Defendants. | Civil Action No.: 1:15-cv-05701 <br><br> Judge Andrea R. Wood <br><br> Jury Trial Demanded |

**DEFENDANT VANTE, INC.'S PRELIMINARY RESPONSE TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST
FOR A RULE 26(d)(1) ORDER TO PERMIT LIMITED DISCOVERY**

Defendant Vante, Inc. ("Vante"), by and through the undersigned counsel, hereby submits that the August 6, 2015 motion of Keysmart, LLC ("Keysmart") for a preliminary injunction is defective on multiple grounds and should be denied. In the alternative, Vante requests a Rule 26(d)(1) order to permit limited discovery relating to preliminary injunction issues and the opportunity to submit a formal response.

I.  **KEYSMART'S MOTION FOR A PRELIMINARY INJUNCTION IS DEFECTIVE FOR MULTIPLE REASONS**

   A.  **KEYSMART'S MOTION APPLIES THE WRONG LAW**

Keysmart claims "[t]he Federal Circuit generally views the grant of a preliminary injunction as a matter of procedural law, and on appeal has applied the procedural law of the circuit where the case was brought," and then applies the less rigid Seventh Circuit law throughout its brief. (Dkt. No. 12, at pp. 3-4) (citations omitted). However, it is hornbook law that a preliminary injunction enjoining patent infringement "involves substantive matters unique to patent law and, therefore, is governed by [Federal Circuit] law." *Hybritech Inc. v. Abbott*

*Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988).[1] Keysmart also failed to request preliminary injunctive relief in its Complaint. (*See* Dkt. No. 1).

### B. KEYSMART FAILS TO PROFFER SUFFICIENT EVIDENCE TO JUSTIFY THE "EXTRAORDINARY REMEDY" OF A PRELIMINARY INJUNCTION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Keysmart bears the heavy burden of establishing (1) likelihood of success on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in plaintiff's favor, and (4) that an injunction is in the public interest. *See AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042 at 1049 (Fed. Cir. 2011). Although "these factors, taken individually, are not dispositive," (*see Hybritech,* 849 F.2d at 1451), "a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

#### 1. Keysmart is Unlikely to Succeed on the Merits

To demonstrate a likelihood of success on the merits, Keysmart must establish that it will likely prove that Vante infringes U.S. Design Patent No. D705,533 ("the D'533 patent") and that

---

[1] Indeed, in *Revision Military v. Balboa Manufacturing*, a Federal Circuit design patent case that Keysmart cites elsewhere in its brief, the Federal Circuit vacated a district court's denial of a preliminary injunction because the district court erroneously applied a regional circuit law standard. *See Revision Military Inc. v. Balboa Manufacturing Co.,* 700 F.3d 524 (Fed. Cir. 2012). As further background, the *Hybritech* court explained that: "Because the issuance of an injunction pursuant to this section enjoins 'the violation of any right secured by a patent' … a preliminary injunction of this type, although a procedural matter, involves substantive matters unique to patent law and, therefore, is governed by the law of this court." *Id. See also, e.g., Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994) ("An appeal from a denial of a preliminary injunction based on patent infringement involves substantive issues unique to patent law and, therefore, is governed by the law of this court."); *Purdue Pharma L.P. v. Boehringer Ingelhiem GMBH*, 237 F.3d 1359 (Fed. Cir. 2001) (applying Federal Circuit law, not regional circuit law, in determining whether to grant a preliminary injunction).

it will likely withstand Vante's challenges to the validity and enforceability of the D'533 patent. *See Amazon.com,* 239 F.3d at 1350.

### a. Keysmart's Brief Fails to Construe the D'533 Patent

Keysmart's entirely ignores claim construction, a necessary prerequisite to assessing non-infringement and invalidity and thus a likelihood of success on the merits. The Federal Circuit "has held that trial courts have a duty to conduct claim construction in design patent cases . . . ." *Egyptian Goddess Inc. v. Swisa Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (*en banc*) (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571 (Fed. Cir. 1995)). "Where a design contains both functional and non-functional elements, the scope of the claim ***must*** be construed in order to identify the non-functional aspects of the design as shown in the patent." *Id.* (quoting *Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (emphasis added)).

### b. Prior Art May Invalidate the D'533 Patent and May Be Relevant for Non-infringement

Key organizers are not new, and substantial prior art exists. For example:



| US Pat. No. 5,117,666 (Fig. 8, rotated) Issued June 2, 1992 | D'533 Patent (Fig. 8) Filed June 20, 2013 |



| Able Home Aides Key Holder Dated November 24, 2011[2] | D'533 Patent (Fig. 8) Filed June 20, 2013 |

### c. Vante Does Not Infringe the D'533 Patent

In addition to being invalid, the D'533 patent is simply not infringed by Vante's accused products. The test for infringement of a design patent is whether an "ordinary observer" would consider the patented design and the allegedly infringing design as "substantially the same." *Egyptian Goddess,* 543 F.3d at 678. In evaluating infringement under the ordinary observer test, the patentee must establish that an "ordinary observer, ***familiar with the prior art designs***, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d 1294, 1303 (Fed. Cir. 2010) (emphasis added). The ordinary observer test is best applied in a side-by-side comparison of the drawings of the design patent and the accused device. *Id.* at 1304.

As shown below, after ignoring the functional elements, Vante's accused product ("KEY-NINJA™") is meaningfully different from the designs described and claimed in the D'533 patent. Thus, when properly construed, any similarities between the KEY-NINJA™ product and

---

[2] Available on the Internet via the URL https://www.dropbox.com/s/qd9ehoy99y4uc8n/D005-Able_Home_Aides-key_and_holders.pdf?dl=0.

the designs claimed in the D'533 patent result from purely functional considerations. As such, Vante's accused product does not infringe the D'533 patent.



| Exemplary Prior Art | D'533 Patent (Fig. 8) | "KEY NINJA" Product |

This analysis follows *Egyptian Goddess v. Swisa*, where the Federal Circuit, sitting *en banc*, reviewed affirmed the district court's summary judgment of no infringement:



| Prior Art (Falley Buffer Block and Nailco Patent) | Patent-in-Suit (US Pat. No. D467,389) | Accused Product (Swisa Buffer) |

*See generally Egyptian Goddess Inc. v. Swisa*, 543 F.3d 665 (Fed. Cir. 2008). A number of Federal Circuit design patent cases have followed, including an August 7, 2015 opinion in which the Federal Circuit reviewed a district court's claim construction and affirmed its grant of summary judgment of noninfringement:

5



| Patent-in-Suit | Accused Product |
| (US Pat. No. D661,801) | (Covidien) |

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, No. 14-1370, slip op. at *40 (Fed. Cir. Aug. 7, 2015).

### d. The D'533 Patent May Be Invalid for Other Reasons

The D'533 patent may also be invalid as being "dictated by function" pursuant to 35 USC § 171. In view of the prosecution history, the D'533 patent may also be indefinite pursuant to 35 USC § 112.

### 2. Keysmart Suffers No Irreparable Harm

Keysmart also fails to make a clear showing that it has suffered or continues to suffer any irreparable harm. "The burden is [on Keysmart] to demonstrate that its potential losses cannot be compensated by monetary damages." *Automated Merch. Sys., Inc. v. Crane Co.,* 357 F. App'x 297, 301 (Fed. Cir. 2009). This burden requires more than "allegations and conclusory affidavits" from Keysmart itself. *Atari Games Corp. v. Nintendo of Am., Inc.,* 897 F.2d 1572, 1575 (Fed. Cir. 1990).

6

        **a.      Keysmart Fails to Show Why Monetary Damages are Inadequate**

Importantly, Keysmart fails to demonstrate how its damages cannot be quantified. Keysmart may also have an adequate remedy at law for money damages at least to the extent that Vante sells through distribution channels that Keysmart does not even leverage. (*See* Dkt. No.12, at p.7) ("Keysmart has not yet penetrated the conventional retail market."). Furthermore, Keysmart relies on the self-serving affidavit of Michael Tunney ("Mr. Tunney") to prove that it will suffer irreparable harm through loss of market share, loss of goodwill, and price erosion caused by Vante's allegedly infringing conduct. (*See* Dkt. No. 12-5). Absent in his declaration, however, is any supporting evidence. Mr. Tunney's unsubstantiated conclusions are therefore inadequate to establish irreparable harm. *See Nutrition 21, 930 F.2d at 871* ("[N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial").

        **b.      Keysmart has Allowed and Continues to Allow Infringing Products**

"The failure to bring suit against other potential infringers may be relevant to an analysis of irreparable harm, but only when it indicates . . . indifference in enforcing one's patent." *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996). A preliminary injunction against Vante will not ameliorate any irreparable harm that Keysmart is purportedly suffering. Indeed, by its own admission, there are various others in the marketplace that purportedly infringe the D'533 patent. (Dkt. No. 12, at p.2). According to Keysmart, Defendant AU-MY, Ltd. sells an infringing product that is also causing Keysmart "to suffer substantial irreparable damage and injury." (Dkt. No. 1, at ¶ 21). Yet, Keysmart has chosen to not only allow the

7

various other competitors continue in their purported infringement, but also to outright dismiss Defendant Au-My from this lawsuit. (*See* Dkt. No. 14). Keysmart simply cannot reconcile its assertion of irreparable harm vis-à-vis Vante's conduct while allowing others in the marketplace to continue in their purported infringement. Consequently, Keysmart's failure to enforce its patent rights with respect to similar, competing pocket organizers in the market weighs against Keysmart's assertion that it will suffer irreparable harm.

c. **Keysmart Delayed in Bringing its Motion**

Keysmart's claims of irreparable harm are bellied by the fact that it waited ***more than six months*** to bring its preliminary injunction motion. The Federal Circuit has recognized that "delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 2005). Keysmart and Vante have been competing in the market for several months, and Keysmart openly admits that it was aware of the KEY NINJA™ product "[a]t least since 2014." (Dkt. No. 12, at p.2). However, for more than six months after learning of the KEY NINJA™ product, Keysmart did nothing. Subsequently, on June 26 2015, Keysmart filed its Complaint for patent infringement, but then waited six additional weeks before filing its motion. Keysmart provides no explanation for its long delay in seeking preliminary relief. If Keysmart actually believed that the need for an injunction was urgent it would not have waited several months to file its motion. Courts have denied preliminary injunctions for similar delays. *See e.g.*, *Precision Links, Inc. v. USA Products Group, Inc.*, 2009 WL 3076114, *8 (W.D.N.C. Sept. 22, 2009) (5-month delay; injunction denied).

### 3. Keysmart Failed to Demonstrate a "Causal Nexus" Between Vante's Alleged Harms and Infringement of the D'533 Patent

In addition to establishing that it will be at risk of irreparable harm, "the patentee must also establish that the harm is sufficiently related to the infringement." *Apple Inc. v. Samsung Elecs. Co., Ltd.* ("*Apple II*"), 695 F.3d 1370, 1373 (Fed. Cir. 2012). "To show irreparable harm, it is necessary to show that the infringement caused harm in the first place." *Id.* at 1375 (citation omitted). Thus, while Keysmart need not "show that a patented feature is **the exclusive reason** for consumer demand," it must nevertheless show "some connection between the patented feature and demand for [the accused] products." *Apple Inc. v. Samsung Elecs. Co., Ltd.* ("*Apple IV*"), 735 F.3d 1352, 1364 (Fed. Cir. 2013).

Keysmart failed to demonstrate that any alleged irreparable harm it will suffer is caused by Vante's infringement of the D'533 patent. First, Keysmart has failed to identify the particular design elements in the D'533 patent that are allegedly infringed by Vante's accused product. Second, Keysmart has yet to provide any probative evidence that these design elements influence consumer purchasing decisions or drive demand for Keysmart's products. *See Apple II*, 695 F.3d at 1375 ("Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature.").

Rather, Keysmart contends that Vante's aggressive promotion of the KEY-NINJA™ product, coupled with Vante's price cutting and negative advertising, is the primary cause of its injuries. (Dkt. No. 12-5, at p. 3). Thus, the irreparable harm Keysmart asserts it is now suffering stems, not from Vante's alleged infringement of the D'533 patent, but from Vante's choice to offer the Accused Products through the internet, television, and conventional retail outlets. (Dkt.

No. 12, at p.7). As such, Keysmart has not met its burden of proving the requisite causal nexus to establish irreparable harm.

## II.     VANTE'S REQUEST FOR A RULE 26(d)(1) ORDER

In the alternative to denying Keysmart's motion for preliminary injunction outright, Vante requests this Court enter an order under Rule 26(d)(1) to open an abbreviated, limited discovery period. This Court has discretion to allow expedited discovery under Rule 26(d)(1), and has generally applied a "reasonableness" standard when considering such requests. *See Ibarra v. City of Chicago*, 816 F. Supp.2d 541, 554 (N.D. Ill. 2011). "In applying the 'reasonableness' standard, factors a Court may consider include '(1) whether a **preliminary injunction** is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the **expedited discovery**; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Id*. (citation omitted).

A majority, if not all, of the reasonableness factors weigh in favor of granting the Rule 26(d)(1) order. Here, Vante simply seeks to open an abbreviated, limited discovery period that is limited to discovery necessary for Vante to respond to Keysmart's motion for preliminary injunction, which is predicated on several factual representations made by Keysmart and its declarant, Mr. Tunney. (See Dkt. No. 12-5). For example, Keysmart asserts a likelihood of success on the merits, but as discussed above, this question entails a thorough review of the designs claimed in the D'533 patent and the Vante's accused products under the "ordinary observer test," and also raises issues concerning the validity and enforceability of Keysmart's design patent. Likewise, Keysmart's assertion of irreparable harm and that the public will not be harmed if an injunction is granted raises further factual issues. Accordingly, for at least the

foregoing reasons, Vante submits that good cause exists in the present action for this Court to grant a Rule 26(d)(1) order opening a limited discovery period for purposes of addressing the Keysmart's motion for preliminary injunction.

Dated: August 12, 2015

Respectfully submitted,

/s/ Richard S. Stockton
Richard S. Stockton (IL Bar No. 6273109)
Azuka C. Dike (IL Bar No. 6303185)
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001
*rstockton@bannerwitcoff.com*
*adike@bannerwitcoff.com*

***Attorneys for Defendant,
Vante, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2015, a true and correct copy of the foregoing was served on the following attorney for Keysmart, LLC via electronic mail through the Court's CM/ECF system:

**Maxwell J. Petersen**
Lewis Brisbois Bisgaard & Smith LLP
550 W. Adams Street, Suite 300
Chicago, IL 60661
(847) 463-3386
*Maxwell.Petersen@lewisbrisbois.com*

                                          /s/ Richard S. Stockton
                                               FOR VANTE